IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

ALVINO RAMIREZ, JR.,                §
     Plaintiff,                     §
v.                                  §          NO.  EP-12-CV-0498-RFC
                                    §          (By consent)
CAROLYN W. COLVIN,[1]               §
Acting Commissioner of Social Security §
Administration,                     §
     Defendant.                    §

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") finding that Plaintiff was disabled under Title II of the Social Security Act from his alleged disability onset date of February 15, 2009 through February 15, 2010, but that he was not disabled, due to medical improvement, starting February 16, 2010.  For the reasons set forth below, this Court orders that the Commissioner's decision be REVERSED and REMANDED.

<u>**PROCEDURAL HISTORY**</u>

On July 23, 2010, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of February 15, 2009.  (R:109-116)  His application was denied initially and on reconsideration.  (R:44-50, 54-56, 59)  Plaintiff requested a hearing, which was conducted by an Administrative Law Judge ("ALJ") on October 4, 2011.  (R:33-43)  The ALJ issued a decision on November 18, 2011, finding a closed period of disability and non-disability from February 16, 2010

---

[1]  Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

through the date of the decision. (R:9-32) The Appeals Council denied review on October 19, 2012. (R:1-4)

Plaintiff initiated this proceeding on December 18, 2012. (Doc. 1) Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas. (Docs. 3, 15, 19) The parties have filed briefs outlining their positions. (Docs. 21, 22)

## ISSUES

Plaintiff presents the following issues for review:

1.   Whether the ALJ erred in finding that Plaintiff experienced medical improvement related to his ability to work as of February 16, 2010 and was no longer disabled as of that date.

2.   Whether the ALJ erred by failing to accommodate Plaintiff's cane use. (Doc. 21:2)

## DISCUSSION

### I.   *Standard of Review*

This Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence must be more than a mere scintilla, but can be less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). There is no substantial evidence only when the record is void of credible choices or contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

2

A substantial evidence review does not permit the court to re-weigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's; it is irrelevant whether the court believes the evidence preponderates against the Commissioner's decision.  *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve.  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## II.    *Evaluation Process*

The ALJ evaluates disability claims according to a sequential five-step process, determining: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Before reaching the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p.  In making this determination, the ALJ must consider all the record evidence and determine the Plaintiff's abilities despite his physical and mental limitations.  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related

3

symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

Once a claimant is found to be disabled, the ALJ must apply the medical improvement standard to determine whether the disability continues through the date of the decision. *Teague v. Astrue*, 342 F. App'x 962, 963 (5th Cir. 2009) (unpublished) (*per curiam*). The medical improvement analysis proceeds through the eight steps provided in 20 C.F.R. § 404.1594(f): (1) If the claimant is engaged in substantial gainful activity, disability has ended; (2) If the claimant has a listed impairment, the claimant remains disabled; (3) If there has not been a medical improvement—a decrease in medical severity of the impairment(s) as established by objective evidence of the improvement of symptoms, signs, or laboratory findings—disability continues; (4) If the medical improvement is not related to the claimant's ability to do work, disability continues; (5) If one of the exceptions under 20 C.F.R. 404.1594(d) applies, the analysis proceeds to the next step; if one of the exceptions under 20 C.F.R. 404.1594(e) applies, disability ends; (6) If the combination of impairments is no longer severe, disability ends; (7) If the claimant can perform his past work given his current RFC, disability ends; (8) If the claimant can perform other work that exists, disability ends; if not, disability continues.

The burden shifts to the Commissioner to show that the claimant's disability does not continue, i.e., that medical improvement has occurred which is related to the claimant's ability to work, and that the claimant is able to engage in substantial gainful activity, or that an exception applies. *See Joseph v. Astrue*, 231 Fed. App'x. 327, 329 (5th Cir. 2007) (unpublished) (*per curiam*), *cert. den.*, 552 U.S. 1111 (2008); 20 C.F.R. §§ 404.1594(a),(f). The Commissioner must prove that

the disability has ceased and that the claimant is no longer disabled as of the end date.  *Waters*, 276

F.3d at 71.

To determine whether there has been medical improvement, the ALJ must compare the

medical severity of the current impairment(s) to the severity of the impairment(s) present at the time

of the most favorable medical decision finding the claimant disabled.  *See* 20 C.F.R. §

404.1594(b)(7).  If an impairment is one subject to temporary remissions, then improvements that

are only temporary will not warrant a finding of medical improvement.  20 C.F.R. § 404.1594

(c)(3)(iv).  To determine if medical improvement is related to the ability to work, the ALJ must

reassess the claimant's RFC based on the severity of the impairment contemporary to the medical

improvement.  20 C.F.R. § 404.1594(b)(7).  The ALJ must compare the new RFC with the RFC

before the purported medical improvement, indicating what symptoms, signs, or results indicate an

increase of ability or decrease in limitation of what work function.  20 C.F.R. § 404.1594(c)(2).

"When the ALJ finds a claimant entitled to a closed period of disability, the ALJ must apply

the medical improvement standard to articulate when the closed period ends."  *Teague*, 342 F. App'x

at 963, citing *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002).  The date chosen by the ALJ

should not be arbitrary and should be supported by substantial evidence.  *See Gardner v. Astrue*, No.

4:10-CV-226-A, 2011 WL 2292179, at *5 fn 6 (N.D. Tex. 2011) (Report & Recommendation),

adopted by *Gardner v. Astrue*, 2011 WL 2265660 (N.D. Tex. 2011).

### III.    The ALJ's decision

In the present case, the ALJ found that Plaintiff had a severe impairment of chronic back pain

status post lumbar spine laminectomy and disectomy that did not alone or in combination meet or

equal the criteria of any listed impairment.  (R:21-22)  The ALJ determined that between February

5

15, 2009, and February 15, 2010, Plaintiff had the RFC to perform sedentary work, except that he needed to take two hours of recumbent rest in an 8-hour workday.  (R:22)  The ALJ found that Plaintiff could perform neither his past relevant work nor any other occupation given his RFC. (R:23-24)  The ALJ found that Plaintiff was disabled from February 15, 2009, to February 15, 2010. (R:24)

The ALJ then proceeded through the medical improvement decision-making process pursuant to 20 C.F.R. § 404.1594(f).  The ALJ found that as of February 16, 2010, Plaintiff had experienced a medical improvement and his RFC had increased to include performance of light work (in that he can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk and sit about six hours in an eight-hour workday), except that he can perform only occasional postural movements. (R:25-27)  Plaintiff was unable to perform any past relevant work, but based on his age, education, work experience, RFC, and considering vocational expert testimony, the ALJ found that other work existed in significant numbers in the national economy that Plaintiff could perform. (R:27) Thus, the ALJ found that Plaintiff's disability ended February 16, 2010.  (*Id.*)

In finding Plaintiff disabled through February 15, 2010, the ALJ noted that in June 2009, Plaintiff's gait was abnormal, he had problems squatting and could not stand on one leg, there was tenderness to palpation and pain with movement of the lumbar spine, his straight leg raise was positive to the left, and range of motion was dramatically reduced in all planes. (R:22)  In September 2009, Plaintiff ambulated with a walker and had difficulty walking on his toes.  (R:23)  In January 2010, Plaintiff could lift 59 pounds with pain, his grip strength was normal, there was decreased range of motion in his lumbar region with pain, and he had decreased tolerance to prolonged sitting, standing, and walking.  (R:23)

6

In assessing Plaintiff's RFC as of February 16, 2010, the ALJ cited the following evidence. In late February 2010, Luis Marioni, D.C., Plaintiff's chiropractor, indicated that Plaintiff was able to perform a range of light to medium work with occasional postural limitations.  (R:25, 661-664, 237-242)  Plaintiff was able to walk on heels and toes, could bend and reach for his toes without much problem, and had only intermittent pain.  (R:25, 456)  In April 2010, Plaintiff's gait was normal, he was able to walk on heels and toes, squat, and stand on one leg without difficulty.  (R:25, 209-212)  He had slight tenderness to palpation of his paraspinal muscles.  (R:25, 720)  Range of motion was slightly reduced.  (R:25, 230-234, 659)  Dr. Charles George assessed that Plaintiff could work at a sedentary level.  (R:25, 209-212, 261)  In June 2010, Plaintiff could bend and reach for his knees and walk on heels and toes, all with complaints of pain.  (R:25, 453)

The ALJ gave little weight to Plaintiff's treating physician, Dr. Zolfoghary, with respect to his opinion that Plaintiff remained totally disabled, and to Dr. George's opinion and Luis Marioni's latest opinion that Plaintiff could work at less than a sedentary level with postural restrictions, stating that they were all unsupported by the record, which showed that Plaintiff can carry and lift at the medium range, has a normal gait, and is able to perform postural maneuvers satisfactorily.  (R:26, 453, 735, 985-988)  The ALJ afforded great weight to the state agency medical consultants' assessments, finding them to be supported by the medical findings showing only mild to moderate abnormalities and Plaintiff's positive response to medication.  (R:26)  The ALJ adopted the RFC assessed on reconsideration, that Plaintiff could stand and walk for around six hours in an eight-hour day, rather than the RFC assessed on initial review, that Plaintiff could stand and walk two to three hours in an eight hour day.  (*Compare* R: 25, 495-502, 507-514)

The ALJ acknowledged that throughout 2010 Plaintiff remained positive for decreased range of motion, tenderness on palpation, and pain on movement of the lumbar spine. (R:25)  He also recognized that Plaintiff's sensory was occasionally decreased in his left leg. (*Id.*)  The ALJ noted, however, that Plaintiff's gait and station remained normal and no significant neurological deficits were noted. (R:25-26)  The ALJ stated that after February 2010, records showed that Plaintiff began to improve. (R:26)  His gait and station were normal and he no longer required the use of an assistive device to ambulate. (*Id.*)  There was no objective evidence of muscle atrophy, deformity, or loss of range of motion in any extremity or joint. (*Id.*)  His pain symptoms improved and he admitted that medication was helpful. (*Id.*)  He was able to perform most postural functions satisfactorily and was able to tend to his personal needs. (*Id.*)

## III.   *Analysis*

Plaintiff asserts that the ALJ erred in finding that Plaintiff experienced medical improvement related to his ability to work as of February 16, 2010, and was no longer disabled as of that date. (Doc. 21:2)  Plaintiff argues that the ALJ failed to compare all of Plaintiff's limitations before and after the alleged date of medical improvement. (Doc. 21:6)  Plaintiff complains that the ALJ does not make clear on what evidence he relies. (Doc. 21:4)  He further maintains that nothing in the record supports the ALJ's reassessed RFC determination. (*Id.*)

The Commissioner responds that substantial evidence supports the ALJ's determination that as of February 16, 2010, Plaintiff re-acquired the RFC the ALJ determined. (Doc. 22:4) The Commissioner argues that, as in *Jones v. Astrue*, No. 3:10-CV-2342-D, 2011 WL 2633793 (N.D. Tex. 2011), although the evidence does not pinpoint a precise point in time when Plaintiff's condition improved, the objective medical evidence, coupled with Plaintiff's subjective statements

8

regarding his symptoms, supports the ALJ's finding that as of February 16, 2010, a medical improvement had occurred.  (Doc. 22:5)  The Commissioner asserts that the ALJ cited to medical improvements in the months prior to the medical improvement date and that such is sufficient to meet the burden to establish a date of medical improvement.  (Doc. 22:5-6)

> A.      *Substantial Evidence Does Not Support the ALJ's Decision*

The ALJ set forth Plaintiff's RFCs before and after February 16, 2010.  The ALJ did not separately articulate which work functions he found to have increased.  Comparing the two RFCs the ALJ assessed for Plaintiff, the Court infers that the ALJ found that, by February 16, 2010, Plaintiff's RFC had improved with respect to: (1) his ability to lift and carry, (2) his ability to tolerate prolonged standing and walking—now able to do each for up to six hours in an eight hour work day, and (3) his need for two hours of recumbent rest during the eight-hour workday—now having no such need.  (Compare R:22, 25)  Plaintiff's RFC declined with respect to performing postural activities to only occasionally, where there were no postural limitations in his initial RFC.  *See* (*id*.); SSR 96-9p, 1996 WL 374185 (July 2, 1996) (postural and manipulative limitations may erode the sedentary base.)

The ALJ summarized the evidence supporting his finding of disability prior to February 16, 2010: abnormal gait, difficulty walking on his toes, requiring an assistive device to walk, problems squatting, inability to stand on one leg, tenderness to palpation, pain with lumbar spine movement, positive straight leg raise test, dramatically reduced range of motion, and decreased tolerance to prolonged sitting, standing, and walking.  (R:22-23)  The ALJ acknowledged those symptoms, signs, and laboratory findings that had not improved: decreased range of motion, tenderness on palpation, and pain with lumbar spine movement.  (R:25-26)  The ALJ acknowledged Plaintiff's new symptom

9

of decreased sensory in his left leg.  (R:26) Then the ALJ summarized his findings from the evidence on which he based his determination that a medical improvement had occurred by February 16, 2010: Plaintiff no longer required an assistive device to ambulate, his gait and station remained normal, he was able to perform most postural functions satisfactorily, no significant neurological deficits were noted, his pain symptoms had improved, his medication helped, he was able to tend to his personal needs, and there was no evidence of atrophy, deformity, or loss of range of motion in any of his extremities or joints.  (R:26)

Although the ALJ summarized evidence supporting his finding of disability prior to February 16, 2010, and evidence supporting his finding of non-disability after February 16, 2010, he did not correlate the implied improvement of symptoms, signs, and laboratory findings with the increases determined in Plaintiff's work functioning.  20 C.F.R. § 404.1594(c)(2). Thus, the Court is unable to determine whether the correct legal standards were applied by the ALJ in finding medical improvement or whether substantial evidence in the record supports his decision.

### 1.    *Lift/Carry*

While none of the improvements identified by the ALJ indicate increase in strength, the ALJ noted that Plaintiff could lift 59 pounds with pain in January 2010.  (R:23)  Plaintiff argues that he could only lift 48 pounds occasionally with pain in February 2010.  (Doc. 21:5; 240)  Both of these weights exceed the maximum weight for lift and carry for sedentary work and the minimum weight required for light work.  *See* 20 C.F.R. § 404.1567(a).

### 2.    *Stand/Walk*

Regarding Plaintiff's ability to walk, the ALJ cites to evidence of improvement from before and after the cessation date.  The ALJ concluded that Plaintiff no longer had need of an assistive

10

device to be able to ambulate.  (R: 26)  This determination is supported by substantial evidence.  The last date on which any such device was mentioned in the medical records was October 20, 2009, which stated that Plaintiff was walking with a cane.  (R:472)  Marioni's medical source statement dated September 20, 2011, also does not restrict Plaintiff to walking with a cane, though it restricts him to walking for less than two hours a day.  (R:985-988)  The ALJ cited to evidence showing a progression of improvement from June 2009 to April 2010.  (R:22, 25, 209-212, 374-378, 397, 456)  While this evidence appears to demonstrate improvement in Plaintiff's ability to walk, it does not necessarily evince an increase in the duration of standing or walking which Plaintiff could tolerate.

Plaintiff's inability to tolerate prolonged sitting, standing, and walking was noted on May 4, 2009 (R:319), January 19, 2010 (R:200), and February 24, 2010 (240, 664).  The state agency medical consultant on initial review found the medical records supported a limitation of standing and walking to two to three hours in an eight hour work day "due to radicular pain s/p lumbar surgery" numbness and weakness and radiation of pain to his left leg with positive signs for sciatic disc compression bilaterally and decreased range of motion.  (R:496, 502)  The state agency medical consultant on reconsideration assessed that Plaintiff could stand and walk about six hours in an eight hour day, noting the same reasons the ALJ noted: normal gait, heel and toe walking within normal limits, squatting within normal limits, standing one leg normal, negative Romberg test, negative straight leg raising test, and sensory intact bilaterally although pain, numbness, and weakness were reported.  (R:508, 514)  The latest medical evidence the medical consultant cited on reconsideration was Plaintiff's evaluation on April 28, 2010  (R:514), and the latest to which he refers may be from June 25, 2010.  (R:514, 705)  Thus, it appears the conclusion that Plaintiff had a higher tolerance for

prolonged standing and walking after February 15, 2010, is based at least in part on the symptoms and signs noted as results of orthopedic and neurological tests.

To support his conclusion that no significant neurological deficits were noted, the ALJ cited only to a normal EMG of both lower extremities from August 2010; neither he nor the medical consultant on reconsideration address any of the positive signs that were observed after February 15, 2010. (R:26, 514) On April 28, 2010, ankle jerk was absent on the left. (R:260) On May 18, 2010, Plaintiff was observed experiencing great difficulty bending. (R:454) On June 15, 2010, Plaintiff had a positive result for the Bechterew test, which is indicative of intervertebral disc protrusion.[2] (R:279, 282) He had a negative result in the straight leg raising test on June 25, 2010. (R:706) But then on June 29, 2010, he again had positive results on the Bechterew test as well as the Lasegue test, which is indicative of lumbar disc herniation and radiculapathy.[3] (R:275) On July 29, 2010, he again tested positive on the Bechterew test. (R:681) On August 18, 2010, reflex was absent on the left ankle. (R:720) On August 30, 2010, he was positive for Bechterew, Lasegue, and the Goldthwaite test, which is designed to differentiate between sacroiliac and lumbosacral involvement.[4] (R:718)

---

[2] Bechterew's Test: "The patient is seated in an upright position on a table with both legs hanging off. The examiner passively extends each leg to full extension. The examiner may also extend both legs simultaneously. Inability to fully extend a leg or pain in the posterior thigh, calf or foot is a positive sign and is indicative of an intervertebral disc protrusion." *See* http://www.kawarthatherapeutic.com/orthopedic-tests.html (Last viewed Mar. 26, 2014)

[3] The Lasegue's Sitting Test is a malingering test: "This test is used for indicating low back radiculopathy or lumbar disc herniation. The patient is seated upright on the edge of a table or bench without a backrest. The examiner extends the patient's legs below the knee one at a time, so each limb is parallel with the floor. If there is no radiculoneuropathy, the patient should experience no discomfort from this action. It has advantages when checking for malingering, because the test can be performed without the patient knowing what is being tested. This version can be used on those patients where simulation, falsifying or magnification of symptoms is suspected." *See* http://www.kawarthatherapeutic.com/orthopedic-tests.html (Last viewed Mar. 26, 2014)

[4] Goldthwaite's Sign: "This test is designed to differentiate between sacroiliac and lumbosacral involvement. With the subject supine, the examiner palpates the lumbosacral joint while slowly straight leg raising the limb on the affected side. The test is then repeated on the unaffected side. When pain is brought on before the lumbosacral joint is opened and it's possible to raise the leg on the unaffected side to a greater level than the limb on

He also had leg weakness, decreased knee strength, loss of sensibility of his left leg, and decrease of sensibility in his thigh. (*Id.*) Then on November 5, 2010, Plaintiff had a positive straight leg raising test, which indicates possible vertebral disc injury.[5] (R:697)

Without an explanation by the ALJ as to which improved symptoms, signs, and findings support a finding that Plaintiff is able to tolerate prolonged standing and walking up to about six hours in an eight hour workday, the Court is left guessing as to how the evidence cited by the ALJ relates to the Plaintiff's purported increased tolerance to prolonged standing and walking.

### 3. Recumbent Rest

The ALJ did not specify the reason Plaintiff required two hours of recumbent rest during his period of disability. Consequently, it is impossible for the Court to determine whether Plaintiff's alleged improvements eliminate such need. The Court speculates that one possible need for recumbent rest is for Plaintiff to catch up on his sleep, based on Plaintiff's allegation that his pain prevented him from sleeping more than three to four hours a night. (R:39-41) The records show that Plaintiff complained of sleep problems on the level of 4 out of 4 in May 2009, and again on February 24, 2010, and in October 2010 his sleep problems continued to be noted. (R:227, 239, 652, 661, 699) In 2011, Plaintiff testified that he was not getting more than three or four hours of sleep each night and still needed to lay down a total of at least 1.5 hours per day. (R:41)

---

the affected side without pain, then a lesion of the sacroiliac joint or ligaments is presumed. When no pain is experienced until the lumbosacral movement occurs and pain is felt when either leg is raised to approximately the same height then a lumbosacral lesion is more likely." *See* http://www.kawarthatherapeutic.com/orthopedic-tests.html (Last viewed Mar. 26, 2014)

[5] The Straight Leg Raise Test: "With the subject lying supine on a table, the examiner passively flexes the subject's uninvolved hip while maintaining the knee in an extended position. Complaints of pain on the involved side indicate a positive test and suggest possible vertebral disc injury." *See* http://www.kawarthatherapeutic.com/orthopedic-tests.html (Last viewed Mar. 26, 2014)

The ALJ found that Plaintiff's pain symptoms had improved, which might account for the ALJ's determination that Plaintiff no longer required recumbent rest during the day, assuming Plaintiff's sleep were less disturbed by less pain.  The ALJ cites to Plaintiff's testimony in November 2011 to demonstrate that Plaintiff's pain symptoms had improved to around a level of four to five and down to three with medication, showing that pain medication was helpful in providing at least partial relief from pain. (R:26)  However, the ALJ did not cite to any evidence in the record to indicate what Plaintiff's pain level was on or after February 16, 2010, or before the medical improvement.[6]

The need for recumbent rest before February 16, 2010, however, may have been based on Plaintiff's need to shift positions in an attempt to abate the pain by taking weight off of his back, which may not occur with shifting between sitting and standing or walking.  Evidence that Plaintiff's pain symptoms had generally decreased overall would not necessarily indicate that his need to control the level of pain by resting in a recumbent position for a period of time each day had been eliminated.  Without an explanation by the ALJ as to which improved symptoms, signs, and findings support a finding that Plaintiff required two hours of recumbent rest and which support a finding that he no longer requires two hours of recumbent rest each day, the Court is left guessing as to how the evidence cited by the ALJ relates to the Plaintiff's purported change in need for recumbent rest.

---

[6]   A review of the records reflects that between March and August 2009, Plaintiff's reports of pain ranged from 6-8 on a scale of 10.  (R:305, 344, 337, 317-322, 328, 382, 365, 358)  From August through November, his pain ranged anywhere from 2 to 10.  (R:351, 966, 399, 899, 475, 755, 390, 383, 650)  From December to the end of August, his pain reports were in the 4-5 range, except for a 7 in May and a 2 in August. (R:433, 227-229, 250, 238-242, 448, 230-234, 257-258, 286, 279, 263-266, 714)  In September and October 2010, Plaintiff's reports of pain increased again to 7-8 as the least amount of pain he had in the past 24 hours and 9-10/10 as the worst.  (R:696, 702, 708, 699).

The Court cannot determine from the ALJ's decision on what specific symptoms, signs, or laboratory results the ALJ relied in finding that Plaintiff's tolerance for prolonged standing and walking had increased to around six hours per day, and in finding that Plaintiff no longer required any recumbent rest per workday, where he previously required two hours per day, especially by February 16, 2010.  Further, the Court cannot conclude from the ALJ's decision that the ALJ considered the possibility that Plaintiff experienced a temporary remission, in light of the worsening symptoms and signs later in 2010, such that the noted improvements would not be sufficiently sustained to find the Plaintiff no longer disabled.  *See* 20 C.F.R. § 404.1594(c)(3)(iv)(factors to consider in determining medical improvement).

The ALJ's explanation is insufficient to support the denial or cessation of benefits.

### B.      Date of Non-disability/Cessation of Benefits

Defendant argues that although the evidence may not pinpoint a precise point in time when Plaintiff's condition improved, the objective medical evidence and Plaintiff's subjective reports support the finding that the medical improvements upon which the ALJ based his RFC assessment had occurred by at least February 16, 2010.  (Doc. 22:5)  In his decision, the ALJ stated that "*after* February 2010, records show that Plaintiff *began* to improve."  (R:26, emphasis added)  While this may have simply been a misstatement by the ALJ, it is a significant one.  The Commissioner has the burden of proving that the claimant is no longer disabled as of the cessation date.  *Waters v. Barnhart*, 276 F.3d at 718.  There must be substantial evidence to support the finding that the claimant has experienced the medical improvement, upon which the new RFC is based, by the date selected by the ALJ for cessation of benefits.  Moreover, while the date selected need not correspond to the date of a specific finding, it should not to be an arbitrary date.  While a date exactly one year

15

from the onset of Plaintiff's disability is not arbitrary, it suggests that the date selection was based on something other than the medical evidence.

**C.      Plaintiff's Need to Use a Cane**

Because the Court determines that the Commissioner's decision should be reversed and remanded on Plaintiff's first issue for review, the Court does not reach Plaintiff's additional claim of error regarding whether the ALJ erred by failing to accommodate Plaintiff's need to use a cane in his RFC assessment.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be REVERSED AND REMANDED consistent with this opinion.

**SIGNED** and **ENTERED** on March 28, 2014.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE